```
            UNITED STATES DISTRICT COURT

     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

       HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

                         - - - -
```

**CERTIFIED COPY**

```
UNITED STATES OF AMERICA,       )
                                )
              PLAINTIFF,        )
                                )
     vs.                        )   No. CR 13-706(A)-RGK
                                )
SCOTT J. ALGUIRE and             )
PHILLIP L. COOPER,              )
                                )
              DEFENDANTS.       )
_____)


          REPORTER'S PARTIAL TRANSCRIPT OF JURY TRIAL

              (TESTIMONY OF WITNESS GRAND EALY)

                   WEDNESDAY, MAY 7, 2014

                         1:15 P.M.

                   LOS ANGELES, CALIFORNIA




     _____

          SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
          Official Reporter, U.S. District Court
                    255 East Temple Street
                    Los Angeles, CA  90012
                       213.894.5949
```

```
 1  APPEARANCES OF COUNSEL:

 2


 3  FOR PLAINTIFF UNITED STATES OF AMERICA:

 4        ANDRE BIROTTE, JR., UNITED STATES ATTORNEY
          BY:  LAWRENCE S. MIDDLETON, ASSISTANT U.S. ATTORNEY
 5             DOUGLAS M. MILLER, ASSISTANT U.S. ATTORNEY
          312 NORTH SPRING STREET
 6        LOS ANGELES, CALIFORNIA  90012
          213.894.5010
 7        213.894.2216

 8


 9  FOR DEFENDANT PHILLIP L. COOPER:

10        STANLEY I. GREENBERG, A LAW CORPORATION
          BY:  STANLEY I. GREENBERG, ATTORNEY AT LAW
11             EVAN GREENBERG, ATTORNEY AT LAW
          11845 WEST OLYMPIC BOULEVARD, SUITE 1000
12        LOS ANGELES, CALIFORNIA  90064-5024
          424.248.6600

13

14  FOR DEFENDANT SCOTT J. ALGUIRE:

15        MICHAEL B. CLAYTON & ASSOCIATES
          BY:  WILLIAM L. REDELL, ATTORNEY AT LAW
16        400 EAST ORANGE STREET
          SANTA MARIA, CALIFORNIA  93454
17        805.928.5353

18


19  ALSO PRESENT:

20         ALEXANDER LOMVARDIAS

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

<pre>
                        I N D E X


  DEFENSE WITNESS:                                   PAGE

  **GRAND EALY**

    DIRECT EXAMINATION BY MR. GREENBERG               5

    DIRECT EXAMINATION BY MR. REDELL                  9

    CROSS-EXAMINATION BY MR. MIDDLETON               12




                       E X H I B I T S

  DEFENSE                   MARKED            RECEIVED

     B                        --                 9
</pre>

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, MAY 7, 2014

 2                              1:15 P.M.

 3                               - - - -

 4         (Prior proceedings were reported in this matter;

 5         not transcribed herein.)

 6         (In the presence of the jury:)

 7             MR. GREENBERG:  May I call the next witness?

 8             THE COURT:  Yes, please.

 9             MR. GREENBERG:  Next witness, Mr. Grand Ealy.

10         Sharon?

11             THE CLERK:  Yes?

12             MR. GREENBERG:  I'm probably going to need Exhibit B.

13    Just hold it.

14             THE CLERK:  Got it ready.

15         Mr. Ealy, right here to be sworn, please.

16         (Witness sworn.)

17             THE CLERK:  Thank you.  You may be seated.

18         May I please ask that you state your full name for the

19    record and spell your last name.

20             THE WITNESS:  Grand Jason Ealy.  Last name E-a-l-y.

21             THE CLERK:  Thank you.

22             MR. GREENBERG:  May I proceed?

23             THE COURT:  Yes, please.

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1 | **GRAND EALY** |
| 2 | **CALLED AS A WITNESS BY THE DEFENSE** |
| 3 | **DIRECT EXAMINATION** |
| 4 | BY MR. GREENBERG: |
| 5 | Q.   Good afternoon, Mr. Ealy. |
| 6 | A.   Hello, sir. |
| 7 | Q.   We've heard your name.  Nice to meet you. |
| 8 |      Would you identify your employment, please. |
| 9 | A.   I'm a special agent for a criminal investigator, U.S. |
| 10 | Forest Service. |
| 11 | Q.   And for how long have you been employed by the Forest |
| 12 | Service in that capacity? |
| 13 | A.   Since May of 2011. |
| 14 | Q.   Let me ask you to please pull the microphone a little |
| 15 | closer to you or lean forward, one of the two. |
| 16 | A.   Is this better, sir? |
| 17 | Q.   Yeah, that's fine. |
| 18 |      Since when?  I'm sorry? |
| 19 | A.   Since May of 2011. |
| 20 | Q.   Okay.  Directing your attention to late September of 2011, |
| 21 | were you present with Mr. Lomvardias when you went to the |
| 22 | Huasna Cattle Company or -- you know the ranch I'm talking |
| 23 | about? |
| 24 | A.   Yes, sir, and I was. |
| 25 | Q.   What was the name of that place? |

```
 1   A.   Huasna Cattle Company or Huasna Ranch.
 2   Q.   Okay.  And you were involved in the interview of
 3   Mr. Cooper; is that right?
 4   A.   I was.
 5   Q.   Did Mr. Cooper tell you in that conver- -- what did
 6   Mr. Cooper tell you about whether he ever got out of the
 7   vehicle?
 8            THE COURT:  Go ahead.
 9            THE WITNESS:  Can you put it in a little bit of
10   perspective, sir?
11            MR. GREENBERG:  Well, I don't think the judge wants a
12   narrative.  Just a moment, let me see if I can narrow it down a
13   little bit.
14            THE WITNESS:  Just a bit, sir.
15            THE COURT:  You talking about as to when he got out of
16   the vehicle?  Is that what you're asking about?  Never mind,
17   I'll let counsel handle it.
18            THE WITNESS:  Thank you, sir.
19   BY MR. GREENBERG:
20   Q.   Let me try again.  Was there some discussion about whether
21   Mr. Cooper got out of the vehicle when he would make contact
22   with visitors of the Forest Service in that area?
23   A.   There was conversation about it.
24   Q.   What did he tell you about that?
25   A.   He stated that he never got out of the vehicle to make
```

```
 1   contact with people.
 2   Q.   And did you handle -- did you keep notes that day?
 3   A.   I did, sir.
 4   Q.   Didn't you write in your notes that he exited the vehicle
 5   to make contact?
 6   A.   I did not, sir.
 7            MR. GREENBERG:  Now, may Exhibit B be placed before
 8   him, please?
 9            THE CLERK:  Sure.
10            THE WITNESS:  Thank you, ma'am.
11            THE CLERK:  You're welcome.
12   BY MR. GREENBERG:
13   Q.   And could you please direct your attention to page 3, the
14   top two lines.  Did you write "exited vehicle to make contact,
15   Eddie stayed in the car"?
16            THE COURT:  Let me -- just a second.  Exhibit B, page
17   3?  Is that what you said?
18            MR. GREENBERG:  Top of page 3, your Honor, top two
19   lines.
20            THE COURT:  Okay.
21        Is that your notes?
22            THE WITNESS:  These are my notes, your Honor.
23            THE COURT:  Go ahead.  The question?
24   BY MR. GREENBERG:
25   Q.   My question is, didn't you write those words?
```

```
 1    A.    I wrote "exited vehicle to make contact"?  Or, I'm sorry,
 2    I wrote "enter vehicle to make contact, Eddie stayed in car."
 3    I did not write "exited."
 4    Q.    That word is "enter"?
 5    A.    That word is "enter," e-n-t-e-r.
 6    Q.    And enter which vehicle?  What vehicle were you talking
 7    about?  The Forest Service vehicle?
 8    A.    The Forest Service law enforcement vehicle, yes, sir.
 9    Q.    When did you write these notes?
10    A.    At -- at or near the same time that Mr. Cooper was
11    relaying these facts to me.
12    Q.    Was it simultaneous?
13    A.    As close to simultaneous as I can get, yes, sir.
14    Q.    When -- more specifically, when did you write them?
15    A.    He would tell me the story, and then I would have -- I had
16    him tell me again.  At the time -- at that time, I wrote them.
17    Q.    So you went through it twice with him?
18    A.    Yes, sir.
19    Q.    Okay.  And who else was present?
20    A.    It was myself, Agent Lomvardias, as well as
21    Miss Stevenson, who was in the car.
22    Q.    Was she in earshot?
23    A.    I don't know, sir.
24    Q.    Did she appear to be in earshot?
25    A.    I would be speculating if I could say that she heard or
```

1  not.  She was close.
2  Q.   Fair enough.  Okay.
3       Your Honor, I'm going to ask that those two lines be
4  redacted so the jury can see them themselves, and I'm going to
5  move them into evidence.
6       THE COURT:  I thought that Exhibit B was already moved
7  into evidence.  It's not been moved into evidence?
8       MR. GREENBERG:  It was not moved in evidence.  It was
9  used to refresh memory.
10      THE COURT:  Okay.
11      MR. GREENBERG:  Okay.  Thank you.
12    *(Received in evidence, Exhibit B, two lines.)*
13      MR. GREENBERG:  No further questions, Mr. Ealy.  Thank
14  you.
15      THE COURT:  Counsel.
16      MR. REDELL:  Yes.
17                     **DIRECT EXAMINATION**
18  BY MR. REDELL:
19  Q.   Officer Ealy, just a few follow-up questions specific to
20  Mr. Alguire.
21       Do you recall speaking to Mr. Alguire?
22  A.   Yes, sir.
23  Q.   Okay.  Had you spoken to Mr. Alguire prior to September
24  2011?
25  A.   Prior to 2011?

```
 1  Q.    September 2011.
 2  A.    Prior to the month of 2000 -- September 2011?
 3  Q.    Sure.
 4  A.    No.  Not to my -- not to my recollection.
 5  Q.    Had you spoken to Mr. Alguire with respect to obtaining a
 6  Forest Service vehicle for yourself?
 7  A.    Possibly.
 8  Q.    You don't recall ever asking Mr. Alguire whether or not
 9  you can obtain a Forest Service vehicle?
10  A.    I don't recall an exact conversation like that, no, sir.
11  Q.    Had you sought permission to drive a Forest Service
12  vehicle prior to September, or even in September 2011?
13  A.    I re- -- I don't remember asking permission, but I
14  remember utilizing this same vehicle that we're talking about
15  now, in an operation in August of 2011.
16  Q.    Okay.  Which would be prior to September 2011; isn't that
17  correct?
18  A.    Yes, sir, but I don't -- I do not -- I don't recall asking
19  permission.
20  Q.    How did you go about obtaining the vehicle?
21  A.    I believe I spoke with the patrol captain and asked him if
22  the vehicle was available, and he said yes, and then I asked
23  Mr. Alguire for the keys.  I don't remember ever asking
24  permission.
25  Q.    Okay.  But you did ask Mr. Alguire for the keys?
```

```
 1  A.   I did.
 2  Q.   And that's the only conversation you had with Mr. Alguire?
 3  A.   The only one that I can recall offhand, yes, sir.
 4  Q.   Okay.  Who did you speak to prior to Mr. Alguire?
 5  A.   Patrol Captain Servando Alfonso.
 6  Q.   Why did you speak to him?
 7  A.   Because the marked law enforcement vehicles fall under his
 8  responsibility.
 9  Q.   What did he tell you to do?
10  A.   He said grab the keys from Mr. Alguire.
11  Q.   Okay.
12  A.   He stated -- he gave me permission and then I --
13  Mr. Alguire --
14  Q.   You just stated you didn't seek permission, but now he
15  gave you permission?
16  A.   From the patrol captain, not Mr. Alguire.
17  Q.   Okay.  I didn't ask you whether or not you received
18  permission from Mr. Alguire.  I asked you whether or not you
19  received permission.
20  A.   Oh, I'm sorry.  In that respect, yes, I did receive
21  permission.
22  Q.   Okay.  So you had to seek permission to drive this
23  vehicle; is that correct?
24  A.   I did.
25           MR. REDELL:  No further questions.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1              THE COURT:  Counsel.
2                         CROSS-EXAMINATION
3    BY MR. MIDDLETON:
4    Q.   Special Agent Ealy, just so that we're clear, when you
5    sought permission to use the law enforcement vehicle, you
6    sought that permission from the patrol captain; isn't that
7    correct?
8    A.   That's correct.
9    Q.   And it was because he was the person who was empowered to
10   authorize you to use that vehicle; isn't that right?
11   A.   That's correct, sir.
12   Q.   And Mr. Alguire didn't have that authority, did he?
13   A.   No, sir.
14             MR. MIDDLETON:  Thank you.
15             MR. GREENBERG:  Nothing further.
16        May he be excused?
17             MR. REDELL:  Your Honor --
18             THE COURT:  Well, I don't know.
19             MR. REDELL:  Your Honor, if I could have just one
20   moment.
21             THE COURT:  Sure.
22             MR. GREENBERG:  Oh, I'm sorry.
23             MR. REDELL:  No further questions.  Thank you.
24             THE COURT:  You may step down.  Thank you very much.
25             THE WITNESS:  Thank you, your Honor.
```

```
 1            THE COURT:  May this witness be excused?  Any
 2   objection?
 3            MR. MIDDLETON:  No objection, your Honor.
 4            MR. REDELL:  No objection.
 5            THE COURT:  Okay.  You're free to go.  Thank you for
 6   coming in.
 7        Next witness.
 8
 9        (Further proceedings were reported in this matter;
10        not transcribed herein.)
11
12                              --oOo--
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                            CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported proceedings

 6   held in the above-entitled matter and that the transcript page

 7   format is in conformance with the regulations of the

 8   Judicial Conference of the United States.

 9

10   Date:  MAY 21, 2014

11

12

13

14                      __/S/ SANDRA MACNEIL_____

15                      Sandra MacNeil, CSR No. 9013
```